QUIETWATER ENTERTAINMENT, INC., d/b/a Jubilee/Captain Fun Restaurant, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 3:98CV160/RV.

United States District Court, N.D. Florida, Pensacola Division.

June 28, 1999.

Marion J. Menge, Shell Fleming Davis & Menge, Pensacola, FL, for Quietwater Entertainment Inc., plaintiff.

Carol Koehler Ide, U.S. Department of Justice, Washington, DC, Wendy K. Vann, U.S. Department of Justice, Washington, DC, for United States, defendant.

### ORDER

VINSON, Chief Judge.

Pending are the plaintiff's motion for summary judgment and the defendant's cross-motion for summary judgment (doc. 13).

## I. BACKGROUND

This is an action brought by the plaintiff for a refund of Federal Insurance Contribution Act ("FICA") taxes paid to the Internal Revenue Service. Except where noted, the following facts are not in dispute.

Plaintiff Quietwater Entertainment, Inc., owns and operates a restaurant on Pensacola Beach, Florida, known as Jubilee/Captain Fun Restaurant. The plaintiff receives and records employee tip reports and withholds employee taxes and the employer share of FICA taxes on the basis of reported tips.

By letters dated May 5, 1993, the Internal Revenue Service ("IRS") mailed notice of an assessment and demand for payment of the employer share of FICA taxes allegedly due on tips unreported by the plaintiff's employees for the years 1990 and 1991. The IRS determined that the plaintiff owed additional unpaid FICA taxes on unreported tips in the amount of $7,880 for tips received in 1990, and $12,220 for tips received in 1991. The IRS requested that the amount due be included on the plaintiff's Form 941 tax return for the second quarter of 1993, which was due on July 31, 1993.

The notice and demand did not identify the tip earnings of individual employees, but was made on an aggregate basis using the gross earnings of the plaintiff's restaurant as reported by the plaintiff on its Annual Information Return of Tip Income and Allocated Tips [Form 8027]. The IRS computed taxes owed using a modification of the so-called "McQuatters formula."[1] The plaintiff paid the full amount of the taxes assessed on the Form 941 due on July 31, 1993. The IRS subsequently refunded the full amount, but informed the plaintiff that the amount was refunded in error.

On February 28, 1995, the plaintiff filed an amended Form 941, a corresponding Form 941(c) and a Form 843 containing a claim for a refund of the taxes paid and abatement of the taxes assessed. The IRS filed a lien and levy for the balance of the taxes due, and the plaintiff paid the amount in full during the summer of 1995. The IRS notified the plaintiff on May 3, 1996, that the refund claim was disallowed.

In the plaintiff's restaurant, employees who receive tips share or "tip out" a portion of their tips to the support staff. Employees who might receive such indirect tips include bartenders, barbacks, bread persons, bus persons, and dessert tenders. The management encourages directly tipped employees to share a portion of their tips, and although the portion shared is left to the discretion of the employee, the management gives suggested guidelines: (1) 1.5 percent of sales to bus persons; (2) 1 percent of sales to bartenders; and (3) 1.5 percent of sales to dessert tenders. (doc. 11, Guerra aff.)

The plaintiff contends that the IRS erroneously assessed the employer-only portion of FICA taxes against the plaintiff, and that the IRS should be ordered to refund $21,108 to the plaintiff for the years 1990 and 1991. The plaintiff filed the present action on May 1, 1998, seeking the refund of taxes paid and the abatement of taxes assessed.

---

1. This is a procedure for estimating restaurant waiter's tip income approved by the United States Tax Court in *McQuatters v.* *Commissioner,* 32 T.C.M. (CCH) 1122, 1973 WL 2419 (USTC 1973).

## II. *ANALYSIS*

### A. *Summary Judgment Standard*

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. As the Supreme Court of the United States has instructed, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986); *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir.1987).

However, summary judgment is improper "[i]f a reasonable fact finder could draw more than one inference from the facts, and that inference creates a genuine issue of material fact." *Cornelius v. Highland Lake,* 880 F.2d 348, 351 (11th Cir.1989), *cert. denied,* 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.; see also Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986).

On summary judgment motion, the record and all inferences that can be drawn from it must be viewed in the light most favorable to the non-moving party. *See Souran v. Travelers Ins. Co.,* 982 F.2d 1497, 1502 (11th Cir.1993). Nevertheless, the non-moving party must provide more than a mere "scintilla" of evidence supporting his position, for if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson, supra,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11, 91 L.Ed.2d at 212; *Johnson v. Fleet Finance, Inc.,* 4 F.3d 946, 949 (11th Cir.1993). Furthermore, although the non-moving party must designate "specific facts showing that there is a genuine issue for trial," the court must consider the entire record in the case, not just those pieces of evidence which have been singled out for attention by the parties. *See Hargett v. Valley Fed. Sav. Bank,* 60 F.3d 754, 763 n. 9 (11th Cir.1995) (quoting *Celotex Corp., supra,* 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274, (1986)); *Clinkscales v. Chevron USA, Inc.,* 831 F.2d 1565, 1570 (11th Cir.1987). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. at 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d at 552.

### B. *Discussion*

The plaintiff contends that the IRS improperly estimated the amount of unreported tips, and that the IRS cannot assess its FICA tax liabilities without also auditing each employee of the restaurant for the tax years at issue, and then determining the specific amount of any credit for the employees' Social Security accounts in those years. The IRS responds that it has the authority to assess the plaintiff's share of FICA tax on the unreported tips of employees on an aggregate basis, and is not required to first determine underreporting by individual employees.

In a tax refund suit, the Commissioner's deficiency determinations are presumed correct, and the burden of proof is on the taxpayer to show that the Commissioner's findings were erroneous. *Helvering v. Taylor,* 293 U.S. 507, 514–15, 55 S.Ct. 287, 290–91, 79 L.Ed. 623 (1935); *Mays v. United States,* 763 F.2d 1295, 1297 (11th Cir.1985). "A taxpayer seeking

a refund must show not only that the Commissioner erred, but must establish the correct amount of the refund due." *Mays,* 763 F.2d at 1297.

Under Section 3111 of the Internal Revenue Code, FICA tax is imposed on every employer for Medicare and Social Security with respect to employees, and is computed as a percentage of wages paid by the employer. 26 U.S.C. § 3111. Tips are considered part of an employee's wages for purposes of the FICA tax. 26 U.S.C. § 3121(a), (q). So that the amount of tips can be determined, employees are required to report the amount of tips received to their employer. 26 U.S.C. § 6053(a); 26 C.F.R. § 31.6053–1. Under Section 3121(q), the IRS is authorized to issue a notice of assessment and demand for payment of employee FICA tax where the employee statement of tips is inaccurate or incomplete, or where employees fail to report their tips to the employer in a monthly statement.

When determining and assessing the amount of FICA tax imposed by Section 3111, the IRS can make adjustments using an indirect method, rather than by auditing both the employer and its employees. 26 U.S.C. § 6201. The IRS has used the *McQuatters* formula, with certain modifications, for determining aggregate unreported income subject to employer FICA tax. *McQuatters v. Commissioner,* 32 T.C.M. (CCH) 1122, 1125, 1973 WL 2419 (TC1973). Under that formula:

(1) the total sales of the employer are reduced by a percentage to account for sharing tips and for customers who leave little or no tip; (2) the resulting amount is divided by the total number of hours worked by all servers during the year to determine a sales-per-hour average; (3) that average is multiplied by the number of hours worked by each server to determine the server's yearly sales; and (4) the yearly sales of each server are multiplied by an average tip rate to determine the yearly tip income of each server. . . . The formula uses the charged tip rate (i.e., the tip rate computed on bills charged by customers to credit cards) as a reference point for the average tip rate.

*Bubble Room, Inc. v. United States,* 159 F.3d 553, 557 (Fed.Cir.1998).

According to the government, it has the authority to assess the employer's share of FICA tax on the unreported tips of its employees on an aggregate basis, and it is not required to determine underreporting by individual employees or credit those employees' Social Security wage history accounts. The government relies on *Morrison Restaurants, Inc. v. United States,* 118 F.3d 1526 (11th Cir.1997) a case also involving a Pensacola restaurant, a Ruby Tuesday's owned by Morrison's Restaurants. The plaintiff contends that *Morrison Restaurants* is distinguishable, and that because the government was not authorized to assess the plaintiff's share of FICA tax on an aggregate basis, the plaintiff is entitled to summary judgment on its claim for a refund.

In *Morrison Restaurants,* the IRS assessed the plaintiff an additional $10,124 in employer FICA taxes on the basis of unreported tips, with the amount of the assessment calculated using a modified *McQuatters* formula. *Morrison Restaurants,* 118 F.3d at 1528. After the plaintiff filed suit for a refund, the district court granted the plaintiff's motion for summary judgment, holding that the IRS lacked the authority to assess employer FICA taxes on unreported tips in the aggregate without determining the individual employees' underreporting and without crediting the employees for the employer's share of the assessed FICA taxes. On appeal, the Eleventh Circuit reversed, holding that because the IRS's interpretation of Section 3121(q) was reasonable, it would defer to the IRS interpretation that it had the statutory authority to assess an employer for its share of FICA taxes on unreported tips in the aggregate even if the individual employee shares were not determined and credited to the employees' wage history accounts. *Id.* at 1530.

A divided panel in the Federal Circuit reached a similar conclusion in *Bubble Room, Inc. v. United States*, 159 F.3d 553 (Fed.Cir.1998). In that case, the plaintiff employed over 150 tipped employees at two restaurants it owned in Florida. Employees received hourly wages and tips from customers. In addition, waiters and waitresses who received tips shared their tips with other employees, such as busboys and bartenders. *Id.* at 558. Tip income reported to the IRS showed a tip rate of approximately 16.4 percent on charged receipts and approximately 1.4 percent on cash receipts. The IRS performed a compliance check and determined that the plaintiff owed additional employer FICA taxes on unreported tips, with the tax assessment based on an estimate of the aggregate tip income earned by all tipped employees during the relevant tax year.[2] *Id.* at 559. After the plaintiff paid the assessed FICA taxes, the plaintiff brought suit seeking a refund for overpayment, and the Court of Federal Claims granted the plaintiff's motion for summary judgment. On appeal, the Federal Circuit held that the IRS could assess the employer-only FICA tax against the employer based on the aggregate estimate of unreported tip income earned by all employees, and was not required to estimate tips for each individual employee, but remanded for a determination of whether the assessment was properly calculated. *Id.* at 559–60. *See 330 West Hubbard Restaurant Corp. d/b/a Coco Pazzo v. United States*, 37 F.Supp.2d 1050 (N.D.Ill.1998) (IRS has authority to assess employer's share of FICA tax on unreported tips of employees on aggregate basis without determining underreporting of individual employees). *But see Fior D'Italia, Inc. v. United States*, 21 F.Supp.2d 1097, 1103 (N.D.Cal. 1998) (IRS required to make individual wage assessments against employees before assessing employer's share of FICA tax).

The plaintiff admits that under the law of this circuit in *Morrison Restaurants*, it is liable for payment of FICA tax on unreported tips of its *directly* tipped employees, whether determined as to individual employees or on an aggregate basis. However, the plaintiff contends that the Eleventh Circuit did not consider the issue of shared tips, and that because the *McQuatters* formula cannot be applied to shared tips, *Morrison Restaurants* is not controlling. The plaintiff contends that the IRS is not authorized to impose FICA tax on the plaintiff based on shared tips unreported by indirectly tipped employees.

The *McQuatters* formula was originally developed and approved as an indirect method of computation to determine the amount of tips received by an individual *employee*. In *McQuatters v. Commissioner*, 1973 WL 2419 (1973), tipped employees contested the assessment of additional taxes due on unreported tips for two tax years. The IRS had determined that the tip income reported on the employees' individual tax returns was unrealistically low, and used the formula now known as the *McQuatters* formula to estimate the amount of tip income that the employees had actually received for the tax years in question. *Id.* The Tax Court judge held that the IRS was allowed to use the indirect method, stating that "[i]n the absence of adequate record keeping by the [tipped employees], the [IRS] was justified in reconstructing their tip income by an indirect method, and the method employed was logically and factually sufficient." *Id.* The judge did reduce the flat rate applied by the IRS to account for the sharing of tips by the employees:

> We ... believe that petitioners have justified an additional two percent reduction in the rate to be applied. We are convinced that petitioners gave 10 to 15 percent of their tips to the captains and that to account for this and other factors

*Bubble Room, Inc. v. United States,* 159 F.3d at 559.

---

**2.** The IRS used the modified *McQuatters* formula to calculate the employer FICA tax liability on the aggregate estimated tip income.

respondent's formula should be applied with a 10 percent rather than a 12 percent rate of tipping.

*Id.*

Had the judge in *McQuatters* not reduced the tip percentage rate, the individual employees would have been penalized, in that they would have paid taxes on all tips they received, even though part of the tips were shared with other employees. Under the *McQuatters* formula, as modified by the IRS to apply to the aggregate tip income of all tipped employees in a restaurant, a cash tip rate is computed by determining the charged tip rate, and adjusting that rate to take into account non-tipping customers and the fees retained by credit card companies. *See, e.g., Bubble Room, Inc. v. United States,* 159 F.3d 553, 559 (Fed.Cir.1998). When the formula is applied in this way, the assessment of FICA tax liability is not based on the sum of individual assessments of additional FICA taxes from tipped employees, or from audits of individual tipped employees. Instead, the assessment is based solely on an aggregate estimate of the amount of employees' unreported tips. Thus, in *Bubble Room,* where employees who were directly tipped by customers shared tips with other employees, the Federal Circuit, in a 2 to 1 decision, approved the IRS's use of a modified *McQuatters* formula and held that the IRS had the authority to assess FICA taxes against the restaurant owner based on an aggregate estimate of employees' unreported tip income. *Bubble Room, Inc. v. United States,* 159 F.3d at 566–67. However, in a strong and well-reasoned dissent, Circuit Judge Plager reached the opposite conclusion. *Id.* at 568–73.

As the plaintiff notes, in *Morrison Restaurants,* the Eleventh Circuit did not consider the issue of shared tips, because the restaurant owner in that case stipulated that the IRS aggregate estimate of unreported tips was reasonable. Nor did the *Morrison Restaurants* panel consider the effect of Section 6053(c)(3) of the Internal Revenue Code, as discussed, *infra.*

If *Morrison Restaurants* is not controlling on the issue in this case, then I would reach a different conclusion, because the applicable statutes and regulations indicates that the IRS is not authorized to assess the employer's share of FICA tax on the unreported tips of employees on an aggregate basis.

It is undisputed that there is no statute or controlling regulation that specifically authorizes the IRS to estimate unreported tips of employees on an aggregate basis when calculating an employer's FICA tax in the manner the IRS has done here. The court in *Morrison Restaurants* relies on Section 3121(q) of the Internal Revenue Code as suggesting "[t]hat the employer can be assessed its share of FICA taxes even when the individual employees's share is not determined." 118 F.3d at 1529. However, the answer cannot be found in Section 3121(q). That section provides only that tips received by an employee are considered remuneration for employment, and that where tips are not reported by the employee, remuneration is deemed to be paid on the date that the IRS sends notice and demand for FICA taxes to the employer. While the provision clearly states that an employer can be assessed for its share of FICA taxes on unreported tips, it does not address or support the implication that the individual employee's share need not be determined before such an assessment is made.

Although the Eleventh Circuit in *Morrison Restaurants* finds support in Section 3121(q) for its holding, it also relies on assumptions drawn from an analysis of the FICA tax system itself. The Eleventh Circuit notes that in the Internal Revenue Code, Congress imposed the employee's share of FICA taxes in a provision separate from the provision imposing the employer's share. According to the Eleventh Circuit, "[t]he separation of the provisions into different, parallel subchapters suggests that Congress contemplated that employees' and employer's shares could be imposed separately," and thus supports

the conclusion that determination of individual employees' underreporting need not be linked to the assessment of the employer's FICA taxes. *Morrison Restaurants,* 118 F.3d at 1529. However, the fact that Congress chose to divide such material into two logically separate subparts does not make for a convincing display of Congressional intent on the issue of unreported tips. While the court in *Morrison Restaurants* states that it is unconvinced that Congress's silence can be construed to mean that the IRS cannot assess an employer's share of FICA taxes for unreported tips on the sole basis of an aggregate method, the burden is on the IRS to show a statute or regulation that provides authorization for its method of assessment. Since the *Morrison Restaurants* decision in 1997, Congress and the President have clearly expressed dissatisfaction with the IRS's unauthorized expansion of its tax gathering powers. *See* Internal Revenue Service Restructuring and Reform Act of 1998, P.L. No. 105–206, Title I, Subtitle A. Congress expressly directed, for example, that all IRS employees "may not threaten to audit any taxpayer in an attempt to coerce the taxpayer into entering into a Tip Reporting Alternative Commitment Agreement." *Id.* The IRS is a governmental agency whose powers are set by law, and it can only exercise those powers as expressly authorized or which are clearly necessary to carrying out an authorized duty.

The Eleventh Circuit also decided that the "structure and purpose of the Social Security Act is not inconsistent with a payment of an employer's share of FICA taxes on unreported tips in the aggregate," and noted that under the Social Security Act, assistance is not for the purpose of providing benefits equivalent to FICA taxes paid by the individual and his employer, and FICA taxes are not held in trust for the same individual. *Morrison Restaurants,* 118 F.3d at 1530. I must respectfully disagree with that statement of the law. The entire statutory scheme of the Social Security Act is aimed at the individual, as opposed to an aggregate group of

working taxpayers, and benefits are paid to an individual taxpayer in proportion to the amount contributed to FICA by that individual and his employer over his working lifetime.

The structure and purpose of the Social Security Act is inconsistent with an assessment of an employer's share of FICA taxes on an aggregate estimate of unreported tips. Congress has viewed the taxes raised under FICA to be related directly to the costs and benefits of the Social Security system. *See Weinberger v. Wiesenfeld,* 420 U.S. 636, 647, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975) ("But the fact remains that the statutory right to benefits is directly related to years worked and amount earned by a covered employee, and not to the needs of the beneficiaries directly."). For over sixty years, Congress has resisted the temptation to fund Social Security from general tax revenue as a welfare benefit. That is now, and has always been, a major policy distinction. To construe the Social Security law as requiring an employer to make a general tax revenue contribution unrelated to the individual employee ignores the balance and structure of the system and the law. The Report of the Senate Committee on Finance that discussed the 1987 version of Section 3121(q) (which added the requirement that restaurant employers match the FICA taxes paid and credited to its employees) noted that under the then-current law, employees paid FICA tax on all tips received (up to the Social Security wage base), while employers only paid on a portion of those tips, and concluded that "[i]t is believed that to apportion the costs of Social Security benefits more accurately, employers should be subject to tax on all tips *which are credited for benefit purposes."* S. Print. No. 63, at 203 (1987); 133 Cong. Rec. S34,826 (1987) (emphasis added).

Congress has gradually changed how tip income is treated under FICA. Employers were not subject to any contribution based on tip income until 1977, when the employer was made liable for FICA taxes only on

that portion of the employee's tips approximating the federal minimum wage. Social Security Amendments of 1977, Pub.L. No. 95–216, Title III, § 315(a), 91 Stat. 1509, 1536–37 (1977). As noted previously, in 1987 employers were required to contribute an amount equal to the amounts paid by and credited to employees for tips. 26 U.S.C. § 3121(q). In making these changes, Congress has given no indication that it intended to alter the direct correspondence between employee and employer FICA contributions and the individualized employee Social Security benefits. Under the IRS's interpretation, the determination of underreported cash tips will be made without attempting to determine whether any of the employer's workers actually underreported or failed to report their cash tips, and employees' FICA benefits will not be credited from any increased tax paid by the employer. In light of the symmetrical scheme established by Congress as to FICA benefits, it does not appear that Congress ever intended that FICA taxes be assessed against an employer in excess of the amount contributed by its individual employees when such taxes will never be credited to the individual employees' accounts.

The IRS's adaptation of the *McQuatters* formula to the estimation of aggregate unreported tips is also problematic. The IRS originally developed the formula to make a FICA tax assessment against an individual employee based on an estimate of how much that employee received in unreported tips. *McQuatters v. Commissioner*, 32 T.C.M. (CCH) 1122, 1973 WL 2419 (TC 1973). In attempting to adapt that formula to address the aggregate unreported tip income of multiple employees, the IRS has failed to take into account several important considerations. For example, "wages" subject to FICA tax do not include cash tips received by an employee in any calendar month unless the amount of such cash tips is $20 or more [26 U.S.C. § 3121(a)(12)(B) ], and do not include that part of an employee's received remuneration, including tips, which exceeds the annual contribution and benefit base determined under Section 230 of the Social Security Act [26 U.S.C. § 3121(a)(1) ]. In the absence of any information about the tip income of individual employees, the IRS cannot know whether the wages being assessed are within this "wages band." By using the aggregate estimation method, the IRS cannot represent that its assessment is based on wages within the band that are lawfully subject to the tax.

Thus, assuming that the IRS has accurately estimated the aggregate unreported tips, it would be reasonable to assume that a significant percentage of those tips were earned by employees who received less than $20.00 per month for several months of the year. Students and part-time employees may only work a few hours per week, and there are several off-season months at Pensacola Beach when the business is slow and tips low. The IRS has not accounted for that. Even more serious, the sharing of tips by the waiters with the busboys, bread and dessert tenders, etc., results in even more likelihood of many of them receiving less than $20.00 per month in shared tips. Similarly, at the other end of the spectrum, there may be a few waiters who earn total income (either as a waiter or from other sources or jobs) in excess of the FICA annual base. Undoubtedly, some waiters do have incomes of $75,000 per year or more.

The major deficiency of the Eleventh Circuit's *Morrison Restaurants* decision, however, is that it completely ignores the statutory methodology set out by law for ascertaining unreported tip income in Section 6053(c)(3) of the Internal Revenue Code. Simply stated, the law sets out that restaurant employers are to determine if the total amount of its employees-reported tip income is less than eight percent of the restaurant's gross receipts, and if so, to allocate an amount of tip income necessary to equal that eight percent among the employees customarily receiving tip income. The allocation may be made under three alternative ways: (1) based on

hours-worked; (2) based on gross receipts; or (3) based on good faith agreement. These allocations must be reported to the IRS each year on IRS Form 8027.

In this case, the record reflects that the plaintiff did the allocation as required by law and allocated an additional $83,109.80 in tips for 1991 (among 63 employees) and an additional $22,652.36 in 1990 (among 79 employees). The eight percent tip rate, therefore, is what the law requires and is the result of an extensive study made by Congress of the restaurant industry. Instead of being silent on the matter of unreported tip income, Congress has clearly directed how the IRS and the restaurants are to determine and allocate it.

The IRS has apparently chosen to disregard the law and go beyond what the law specifies. In this case, for example, the IRS has mandated a 12% tip rate for cash tips (and 16% for credit card tips), far in excess of the 8% set out by law. Some of the total differential may be found in the tip sharing arrangement as utilized by the plaintiff and in the exempt "bands."

■ Since the *Morrison Restaurants* decision of this circuit failed to even consider Section 6053(c)(3), which appears to be the controlling law regarding the allocation of unreported tip income, and the effect of shared tips, I do not believe *Morrison Restaurants* is controlling precedent as the law of this circuit on this matter. Therefore, I conclude that the IRS has improperly estimated and allocated the amount of unreported tips.

*CONCLUSION*

For the foregoing reasons, the plaintiff's motion for summary judgment is GRANTED (doc. 11), and the defendant's cross-motion for summary judgment is DENIED. (doc. 13) Judgment shall be entered in favor of the plaintiff, and a refund of $21,108 is ordered, together with interest at the legal rate and taxable costs.