FIOR D'ITALIA, INC., Plaintiff–counter–defendant–Appellee,

v.

UNITED STATES of America, Defendant–counter–claimant–Appellant.

No. 99–16021.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 15, 2000

Filed March 7, 2001

Jeffrey R. Meyer, Attorney for the Department of Justice Tax Division, Washington, D.C., for the appellant.

Tracy J. Power and Thomas W. Power, Power & Power, Arlington, Virginia, for the appellee.

Peter G. Kilgore, for amicus curiae National Restaurant Association in support of Appellee.

Before: KOZINSKI, KLEINFELD and McKEOWN, Circuit Judges.

Opinion by Judge KOZINSKI; Dissent by Judge McKEOWN

KOZINSKI, Circuit Judge.

In a dispute involving a restaurant's share of Social Security taxes on its employees' tip income, we explore the outer bounds of the IRS's power to make tax assessments.

I

Like most restaurants, Fior D'Italia employs waiters, table bussers, bartenders and others whose earnings come in part from tips left by customers. Although these tips are paid by customers directly to employees, federal law deems them to have been paid by the employer for purposes of FICA taxes. *See* I.R.C. §§ 3101, 3111, 3121(a) & (q). This puts employers in an awkward position: They are "deemed," for purposes of tax law, to have paid large sums of money that they have never touched and whose exact amounts they have no way of ascertaining. *See* I.R.C. § 3121(q).[1] Yet employers need to know how much tip income employees receive in order to calculate their own FICA taxes and withhold appropriate amounts from the wage portion of the employees' compensation, pursuant to I.R.C. § 3102.

To make this information known to employers, tipped employees must submit monthly statements (usually on Form 4070) reporting all tip earnings that qualify as wages under the statute. *See* I.R.C. § 6053(a); Treas. Reg. § 31.6053–1(a). Employers, in turn, must report to the government (on Form 8027) their gross sales, charged tips and the tip amounts

---

1. Some restaurants (not Fior) require all employees to pool cash tips for subsequent redistribution, in which case they do know, at least insofar as employees do not pocket some of the tips before pooling the rest. *See 330 West Hubbard Restaurant Corp. v. United States,* 203 F.3d 990, 993 (7th Cir.2000).

reported by employees. *See* I.R.C. § 6053(c)(1).

The dispute before us arose because in 1991 and 1992, Fior D'Italia reported aggregate tips that were significantly less than the tips that appeared on its credit card charge slips.[2] The Internal Revenue Service assessed Fior for additional FICA taxes on what it deemed was unreported tip income for those years. To determine what Fior owed, the IRS used a simple calculation: For each year, it divided total tips charged on credit cards by total credit card receipts, yielding an average tip rate of 14.49% and 14.29% for 1991 and 1992, respectively. It then applied this "tip rate" to the restaurant's gross receipts to get a presumed tip total for the year. The IRS assessed Fior additional FICA taxes based on the difference between its presumed total and the amount of tips Fior's employees had reported.[3] The IRS did not readjust the FICA or income tax liability of the various employees who may have understated tip income on their 4070 forms.

Fior challenged the assessment method in district court, arguing that it exceeded the IRS's authority. The district court agreed, *Fior D'Italia, Inc. v. United States*, 21 F.Supp.2d 1097 (N.D.Cal.1998), and the government appeals.

## II

Because we must decide whether the IRS's assessment is valid, we begin by examining what exactly the IRS is assessing. Section 3111 imposes on every employer a tax equal to a percentage of "the wages ... paid by him with respect to employment." I.R.C. § 3111(a). These wages are defined to include "tips received by an employee in the course of his employment." I.R.C. § 3121(q). But Con-

gress did not treat all tips as taxable wages for this purpose. In section 3121(a)(1), it excluded all remuneration from the employer (salary plus tips) that exceeds the Social Security wage base for that year.[4] In section 3121(a)(12)(B), it excluded all cash tips received by an employee if that amount was less than $20 in a given month. These latter two provisions are often described as defining the "wages band" outside of which tip income is not taxed. *See Bubble Room, Inc. v. United States*, 159 F.3d 553, 555–56 (Fed. Cir.1998) (*Bubble Room II*). For the IRS's aggregate assessment method to precisely equal the tips on which the employer's FICA tax is calculated, the cash tipping rate must be exactly the same as the tipping rate on charge slips, and total tips received must be distributed among employees so that none falls outside the wages band.

Neither condition will hold true in most cases. First, experience shows that charged tips generally exceed cash tips. *See Yukimura v. Commissioner*, 43 T.C.M. (CCH) 467, 470, 1982 WL 10891 (1982). One can think of many reasons why this would be so. Spending credit is easier than spending cash, because actual payment is deferred. Also, people dining on expense accounts generally pay with credit cards, and spending someone else's credit is even easier than spending one's own. Then there is the convenience of being able to write a tip in precisely the amount one deems appropriate. People paying in cash, however generous they may feel, are limited by the amount actually in their wallets and the need to keep some cash until their next visit to Gringott's. Applying the charged tip rate to cash receipts will thus tend to overestimate the cash tips actually paid. And

---

**2.** For 1991, disclosed total charged tips were $364,786, while total tips reported by employees were $247,181. For 1992, the numbers were $338,161 charged and $220,845 reported.

**3.** The IRS concluded that unreported wages totaled $156,545 in 1991 and $147,529 in 1992.

**4.** This base was $53,400 in 1991 and $55,500 in 1992.

charged tips paid to employees may be less than appears on the credit card receipts, because some employers pass on the three percent fee assessed by the credit card companies. *See Bubble Room, Inc. v. United States,* 36 Fed. Cl. 659, 663 (1996) (*Bubble Room I* ), *rev'd, Bubble Room II,* 159 F.3d 553.

The assumption that all tip income falls within the wages band is even more problematic because Fior's employees, like those of many other restaurants, engage in tip sharing. Waiters receive tips from the customers and then share them with table bussers, bartenders and other employees. Much like tips left by the customer, the exact amount shared with others depends on the waiter's generosity and his evaluation of how much other employees contributed to customer satisfaction. Looking only at the aggregate tips collected, we cannot tell how many table bussers made less than $20 in indirect tips per month for some or all of the periods in question.[5] Nor is there any way of knowing how many waiters and hosts received salaries plus tips exceeding the Social Security wage base-something we cannot rule out for an upscale restaurant like Fior D'Italia.

While an employer may be aware that reported tips are less than actual charged tips, it cannot be sure that employees are understating tips in their 4070 forms. Some or all of the discrepancy could be explained by the fact that employees are not required to report tips falling outside the wages band. Even if the employer suspects that some employees are understating their tip income, it has no way of knowing who is underreporting or by how much. Restaurants cannot force waiters to divulge how much they have actually received in tips, and how those amounts were shared with other employees. Nor are employees likely to volunteer such information, because they would be admitting that they committed tax fraud by understating their tip income on the IRS form they submitted to the employer.

The IRS is unimpressed. It believes itself empowered to use any rational method for assessing the tax; the difficulties the employer raises can be considered in determining the precise amount of tax actually owed. If the assessment is valid, the burden shifts to the taxpayer to prove the amount (if any) by which the assessment overstates the tax owed. The question remains whether the assessment is valid.

### III

The IRS's authority to make assessments is a very powerful tool. By making a valid assessment, the IRS shifts to the taxpayer the burden of proving that it does *not* owe the amount of tax the IRS has assessed it. If the taxpayer cannot persuade a trier of fact that the amount assessed is incorrect, the IRS wins and the taxpayer is required to pay that amount. *See Palmer v. IRS,* 116 F.3d 1309, 1312 (9th Cir.1997). So long as the assessment is supported by a "minimal factual foundation," the IRS need not present any additional evidence; the risk of uncertainty falls on the taxpayer. *Id.*

In the income tax context, an assessment becomes even more powerful when coupled with the IRS's authority pursuant to I.R.C. § 446 to redefine the manner in which the taxpayer computes income. Section 446 has been interpreted as giving the IRS authority to make an assessment based on an estimate rather than a computation. *See McQuatters v. Commissioner,* 32 T.C.M. (CCH) 1122, 1125, 1973 WL 2419 (1973). This means that, in making the assessment, the IRS need not rely on the actual records kept by the taxpayer. Where such records are inadequate, the IRS may make an educated guess as to

---

5. While $20 in tips per month is not very much, employees who start employment, leave employment, or take vacation or sick leave within a particular month may well earn less than that.

how much tax is owed, and then put the burden on the taxpayer to prove it wrong.

McQuatters also involved tip income but, unlike our case, it involved the income taxes of the employees who had actually received the income. *See also Mendelson v. Commissioner*, 305 F.2d 519 (7th Cir. 1962). The tipped employees had failed to maintain adequate records of the tips they had received, and the courts held that the IRS was authorized to use an estimate in making its assessment. Because the employees should have maintained records of their income but failed to do so, it was deemed entirely appropriate to put the burden on them to prove that the IRS's estimate overstated their taxable income. *See id.* at 523 ("Obviously, where a taxpayer keeps no records disclosing his income, no method can be devised which will produce an exact result. The law does not require that much."); *McQuatters*, 32 T.C.M. (CCH) at 1125 ("In the absence of adequate record keeping by petitioners, [the IRS] was justified in reconstructing their tip income by an indirect method . . . .").

The taxpayer in our case is in a very different position from the taxpayers in *McQuatters* and *Mendelson*. While each employee knows how much he receives in tips, the restaurant does not. Employees, moreover, have an obligation to maintain records of their tip income and to accurately report such income to their employer on a monthly basis. The restaurant has no obligation to maintain records of tip income, except to the extent its employees report on Form 4070. Unlike the taxpayers in *McQuatters* and *Mendelson*, then, the taxpayer in our case did not fail to satisfy a legal duty imposed on it by the Internal Revenue Code, and thus did not give the IRS just cause for resorting to an estimate in constructing its assessment.

■ Also, unlike the taxpayers in *McQuatters* and *Mendelson*, Fior is not in an inherently better position than the IRS to determine what its employees actually earned in tips. Quite the contrary: Fior lacks the IRS's power to audit its employees and has no other means of forcing its employees to divulge how much tip income they earned during a given year.[6] Forcing the restaurant to prove that the estimate is wrong puts an impossible burden on it, making the already heavy presumption that attaches to an IRS assessment virtually conclusive.

We find this particularly troubling because the IRS's estimate has some serious flaws. As discussed above, the IRS's method for estimating cash tips likely overstates the amount of such tips received. *See* pp. 846–47 *supra*. As to credit card tips, the IRS method fails to take into account the three percent fee imposed by the credit card companies which may be passed on to employees by the restaurant. Nor does the estimate make allowance for the statutory wages bands which limit the restaurant's FICA tax liability.

We can't ignore these inaccuracies on the theory that they will cancel each other out in the long run; they all overstate the base on which the FICA tax is calculated and thus will combine to overstate the amount the taxpayer owes. As Judge Plager noted in his dissent in *Bubble Room II*, "[t]hough it may be that the excess taxes assessed in this manner against the employer amount to a relatively small amount, a Government demand for taxes that are not owed is unlawful on its face and remains unlawful regardless of the amount at issue." 159 F.3d at 569 (Plager, J., dissenting).

**6.** The government suggests that the employer *could* know exactly how much each employee makes in tips by adopting a tip-pooling arrangement. *See* note 1 *supra*. But adopting such an arrangement would alter the way a restaurant does business by undermining the incentive structures created by discretionary tip-sharing. It would be akin to saying that a restaurant must charge a fixed service charge in lieu of tips. Obviously, a restaurant cannot be required to change its business practices in order to avoid paying taxes it doesn't owe.

We have held that the IRS's power to rely on estimates in making its assessment is not without bounds; rather, the IRS must use a "rational method for approximating the correct amount." *Palmer*, 116 F.3d at 1312. Where more accurate information does not exist because the taxpayer failed to maintain adequate records, or where the taxpayer has much better access to the information in question, we will generally defer to the IRS's decision as to what is a rational method for approximating the amount of tax due. But a case where the taxpayer has done everything the law requires of it, where the IRS's access to the relevant information is no worse (and probably much better) than the taxpayer's, and where the estimation method adopted by the government ignores the statutory limits on what is taxable, sorely tests the limits of that deference.

Fortunately, we need not decide whether the IRS has stretched deference to the breaking point because its assessment suffers from a more fundamental flaw: It rests on an estimate in circumstances where Congress has not authorized the IRS to use estimation as an assessment method. *McQuatters* and similar cases relied on I.R.C. § 446, which (as already discussed) gives the IRS broad authority to use estimates in making income tax assessments. But the IRS cannot rely on section 446 as authority for the assessment here because the section does not apply to the collection of FICA taxes.

While acknowledging that section 446 is inapplicable, the Federal Circuit found it "informative" in concluding that the IRS is authorized to construct its assessment by means of estimation. *Bubble Room II,* 159 F.3d at 566. Like Judge Plager, we fail to understand "exactly how that section is informative with regard to the specific is-sue before us." *Id.* at 571 (Plager, J., dissenting). To the extent section 446 has any bearing at all, it suggests that the IRS here was *not* authorized to proceed by estimation. Congress obviously knew how to give the IRS the authority to use estimation in lieu of actual calculations, and just as clearly thought it necessary to say so explicitly when it wished to confer that power. Unlike our colleagues in the *Bubble Room II* majority, we do not believe such an important and sweeping power can be derived from the penumbras and emanations of the Internal Revenue Code.

The IRS points to another source of authority for its assessment, namely I.R.C. § 3121(q). This section provides that an employer is liable for its portion of FICA taxes even when "no statement including such tips is ... furnished" or "the statement so furnished was inaccurate or incomplete." But this section doesn't help the government. All it says is that, where employees have not provided accurate tip information to the employer, and the IRS finds some other means of determining how much the employer owes, the employer must pay its share. Nothing in the text of section 3121(q) speaks to the *method* the IRS may use in making its assessment. In fact, section 3121(q) is worded so differently from section 446 that we cannot conclude they were meant to do the same work.

The IRS points to the fact that section 3121(q) allows it to assess the employer even after the time for assessing the employee has passed. *See* Rev. Rul. 95–7, 1995–4 I.R.B. 44 (Q & A 11).[7] According to the IRS, this implicitly authorizes the use of estimates. The chain of reasoning goes something like this: If the IRS is allowed to assess the employer when it may no longer audit the employees, it will have no way to conduct the assessment except by estimation. Congress therefore

---

7. The Code does this by providing that unreported tips "shall be deemed for purposes of subtitle F to be paid on the date on which notice and demand for such taxes is made." I.R.C. § 3121(q). Thus, the limitations period for the assessment of the employer's FICA taxes only begins to run after notice and demand is made, even if the limitations period for the assessment of the employee's tax has expired.

must have contemplated that the IRS would proceed by estimation in making the assessments.

We do not see this as a necessary implication. Rather, we read section 3121(q) as saying that the IRS need not also conduct an audit of the employer while it is auditing the records of individual employees. Congress doubtless understood that the only way the IRS can determine FICA taxes on tips is by examining the employees' records; there's no point in auditing the restaurant at the same time because it will have no record of tips, other than the information provided by the employees in their 4070 and 8027 forms. But, if the normal limitations period applied, the IRS might have to assess the employer before it finished auditing the employees. Section 3121(q) solves this problem by keeping the period open indefinitely-which means for however long it takes to complete the audit of the restaurant's tipped employees.[8]

■ This does not mean that the IRS may assess the employer only if it also assesses each of its employees. Three other circuits have rejected this argument and, for reasons well expressed in those opinions, we reject it as well. *See 330*

8. Tying the employer's liability to the audit period for its employees also avoids the anomaly that would arise from the fact that section 3121(q) provides no time limit for assessing the employer for additional FICA taxes, making it theoretically possible that the employer could be assessed 10, 20 or more years after the tax year in question. If employer assessments are tied to employee audits, the employer can only be assessed for however long it takes to conduct audits of its various tipped employees, plus a reasonable time thereafter.

9. Accordingly, our holding is entirely consistent with those of the Seventh and Eleventh Circuits, both of which considered only whether the IRS must assess the employees prior to assessing the employer and not whether the IRS may rely upon aggregate estimates-the issue which is the fulcrum of our ruling. *See 330 West Hubbard Restaurant Corp.*, 203 F.3d at 994 ("On appeal, Coco Pazzo argues that the district court erred in holding that the IRS was authorized ... to

*West Hubbard Restaurant Corp. v. United States*, 203 F.3d 990, 995 (7th Cir.2000); *Bubble Room II*, 159 F.3d at 565; *Morrison Restaurants, Inc. v. United States*, 118 F.3d 1526, 1529 (11th Cir.1997). As the government correctly points out, the employer's portion of FICA is separate from the employee's, and the IRS need not collect the one as a condition for collecting the other. Having audited an employee and determined the precise amount of FICA wages the employee has received, the IRS may then choose to assess only the employer, only the employee, or both. If the IRS cannot or will not assess the employee for additional FICA tax, this will not jeopardize its right to assess the employer.[9]

That having been said, it does not follow that the IRS can dispense with auditing the employees' records or otherwise determining the amount each employee earned in tips. For the reasons explained, there is no way to determine the employer's FICA tax liability without making an employee-by-employee determination of the taxable tips each has earned. An aggregate assessment based on inaccurate estimates, as used by the IRS in this case, is simply not authorized.[10]

assess employer FICA taxes based on an aggregate estimate of the tip income received by its employees without first determining the amount of under reporting by individual employees."); *Morrison Restaurants*, 118 F.3d at 1529 ("Morrison Restaurants contends that, in view of Congress's silence, the IRS lacks statutory authority to assess the employer's share of FICA taxes without determining the individual employees' unreported tips and crediting the employees with the employer's share of the tax."). The Federal Circuit's decision in *Bubble Room II* is another story.

10. The dissent worries that the IRS won't be able to collect the employer's share of FICA taxes, because it can't audit every waiter at every restaurant to determine the amount of under-reporting. *See* Dissent. Op. at 858. But if this turns out to be a problem, the IRS can solve it by promulgating a regulation allowing it to assess restaurants using estimates. *See* pp. 851–52 *infra*. Even without such a regulation, we are not convinced that

While recognizing that "I.R.C. § 3121(q) does not fully address the question at issue here," the Federal Circuit nevertheless found that the section "would ... seem to imply that an indirect method may be used to calculate the amount of employer FICA tax in the absence of any better evidence." *Bubble Room II*, 159 F.3d at 565.[11] The Federal Circuit derived this implication as follows: Section 3121(q) comes into play only where "no statement including such tips was so furnished (or to the extent that the statement so furnished was inaccurate or incomplete)." I.R.C. § 3121(q). Because the section applies where the employer's records are inadequate, the Federal Circuit reasoned, Congress must have known that the IRS would have no choice but to use an aggregate estimation method. *See Bubble Room II*, 159 F.3d at 565.

Respectfully, we disagree with our colleagues. If the employer's records are inadequate, it is because its employees have failed to report all their tips. The direct and obvious way of determining the taxable tips actually received is for the IRS to audit the employees. Proceeding by aggregate estimate, and thereby forcing the employer to pay the price for its employees' dereliction, is simply not the only (nor even the best) way the IRS may proceed. We therefore cannot agree that Congress must have had this in mind when it passed section 3121(q).

We are aware that auditing individual employees is much more cumbersome than slapping the employer with assessments based on aggregate estimates. The fact

the IRS must audit every waiter in order to ensure effective collection of the tax. As with other taxes, a vigorous enforcement program will encourage waiters to report tips more accurately, for fear of suffering penalties if caught. Moreover, when it *does* audit waiters, the IRS can also assess the restaurant for its portion of the tax.

11. The Federal Circuit used the term "indirect method" where we use the term "estimate." Both mean the same thing.

12. As the Court of Federal Claims rightly remarked:

remains that Congress authorized the IRS to use estimates in collecting income taxes but withheld such authority in collecting FICA taxes. By using an estimate-and particularly one that ignores the statutory wages bands-and putting on the employer an impossible burden in rebutting the estimated amount, the IRS has effectively increased the tax payable by the employer above that provided in the Internal Revenue Code.[12]

Nor is the IRS without recourse. If auditing individual employees proves too cumbersome, it can seek to have Congress extend its section 446 authority to the collection of FICA taxes. Or, it may proceed by regulation. I.R.C. § 6205(a)(1) speaks to this situation:

> If less than the correct amount of tax imposed by section 3101, 3111, 3201, 3221, or 3402 is paid with respect to any payment of wages or compensation, proper adjustments, with respect to both the tax and the amount to be deducted, shall be made, without interest, *in such manner and at such times as the Secretary may by regulations prescribe.*

*Id.* (emphasis added). This provision seems to authorize the Secretary to give the IRS authority to make assessments based on aggregate estimates by promulgating a regulation to that effect. But, before imposing such rough justice, the Secretary must follow the procedural requirements of notice-and-comment rulemaking.

> "Even a substantially low reporting of cash tips ... does not justify allowing the IRS to shift its responsibility to the employer for policing the acknowledged problem of underreporting of tips by employees. It is the responsibility of the IRS to track down and collect unreported income. If the IRS wishes to shift its duty to employers to ensure proper compliance, it should do so through a congressional enactment and continued cooperation between restaurants and the IRS."
>
> *Bubble Room I,* 36 Fed.Cl. at 678 (Horn, J.).

These are not idle steps. The rulemaking process, by its very design, encourages public scrutiny of an agency's proposed course of action. By giving notice of a proposed rule, the agency provides interested parties with the opportunity to express their views and bring their political influence to bear on the process. *See* 1 Kenneth Culp Davis & Richard J. Pierce, Jr., *Administrative Law Treatise*, § 6.7 (3d ed.1994) (noting that rulemaking enhances the "political accountability of agency policy decisions adopted through the rulemaking process"); Bernard Schwartz, *Administrative Law*, § 4.16 (2d ed. 1984) ("Rulemaking provides the agency with a forum for soliciting the informed views of those affected in industry and labor before adopting a new policy.").

The political process plays a particularly significant role in the arena of tax policy. Congress has delegated to the Secretary broad regulatory powers to adjust the legal obligations of taxpayers. *See, e.g.,* I.R.C. § 6205(a)(1). But before the Secretary can give a regulation legal force, he must endure the scrutiny of interested groups, legislative critics and the public at large. Congress maintains a particularly vigilant oversight through the Joint Committee on Taxation, whose large staff monitors and reports on the collection activities of the Department of the Treasury. *See* I.R.C. §§ 8001, 8004, 8022.

Indeed, Congress has blocked at least one of the IRS's recent efforts to enhance the collection of FICA taxes on cash tips. In 1993, the IRS promulgated a regulation that constrained restaurants' ability to take advantage of a FICA tax credit by limiting the credit to the amount of tip income received and reported by the employee (as opposed to the amount of FICA taxes paid by the restaurant). *See* Treas. Reg. § 1.45B–1T (1994). The purpose of the regulation was to give employers an incentive for encouraging employees to report their tips. *See, e.g., Fior D'Italia*, 21 F.Supp.2d at 1103–04 (quoting Letter from Leslie B. Samuels, Assistant Secretary of

the Treasury, to Senator Trent Lott (Mar. 30, 1994)). Responding to industry complaints, Congress rejected this incentive scheme in 1996 and provided that the tax credit would be available "without regard to whether such tips are reported under section 6053." I.R.C. § 45B(b)(1)(A).

This episode demonstrates the difficulty the executive and the legislative branches have had in reaching common ground on the problem of collecting taxes on employee tips. This should surprise no one, given both the substantial amount of revenue involved and the serious administrative difficulties in determining the amounts employees receive in tips. In the wake of political setbacks, the IRS has tried to solve the problem by assessing restaurants based only on the rough, and somewhat inflated, estimates that we have seen in this case. But before it can take such a significant step, it must obtain authorization directly from Congress or by exercising Treasury's own regulatory authority. Either path involves significant political checks on agency discretion, and we decline to assist the IRS in avoiding the public scrutiny such a process would entail.

**AFFIRMED.**

McKEOWN, Circuit Judge, dissenting:

The issue in this case is the authority of the Internal Revenue Service to use the aggregate method of assessment for the employer's share of Social Security taxes on unreported tip income. The separate issue of the accuracy of the assessment is not before us and the two concepts-authority and accuracy-should neither be confused nor mixed and matched. In affirming the district court's rejection of the aggregate approach, the majority creates a circuit split on a tax issue of national importance. Unlike Quidditch or Fizzing Whizbees, there is nothing magical about the IRS's assessment-the employer owes taxes on the unreported tip income and the IRS has simply devised a practical means of calculating the tip income. In view of our respect for the decisions of sister cir-

cuits in tax cases, our deference to the IRS in interpreting the tax code, and the logic and practicality of the aggregate method, I respectfully dissent.

## A. OTHER CIRCUITS.

The question of whether the IRS is authorized to assess the employer's share of Federal Insurance Contribution Act ("FICA") taxes, commonly known as Social Security taxes, based on the aggregate method without first determining the amount of under-reporting by individual employees is one of first impression in this circuit. Three other circuits, however, have already addressed this issue, and all three have held that the tax code ("Code") authorizes the IRS to do so. *See 330 West Hubbard Restaurant Corp. v. United States*, 203 F.3d 990, 997 (7th Cir.2000); *Bubble Room, Inc. v. United States*, 159 F.3d 553, 568 (Fed.Cir.1998) (*Bubble Room II*); *Morrison Restaurants, Inc. v. United States*, 118 F.3d 1526, 1530 (11th Cir.1997); *see also LIR Mgmt. Corp. v. United States*, 86 F.Supp.2d 340, 346 (S.D.N.Y. 2000); *Quietwater Entm't, Inc. v. United States*, 80 F.Supp.2d 1323 (N.D.Fla.1999), *rev'd in part, vacated in part without op.*, 220 F.3d 592 (11th Cir.2000).

The majority's position places the Ninth Circuit directly at odds with our sister circuits, which is of particular concern in this case, as "[u]niformity among Circuits is especially important ... to ensure equal and certain administration of the tax system." *Hill v. Comm'r*, 204 F.3d 1214, 1217–18 (9th Cir.2000) (internal quotation marks and citations omitted). Until now, we have "hesitate[d] to reject the view of another circuit" in this area. *Id.* (internal quotation marks and citations omitted).

Three years ago the Eleventh Circuit was the first circuit to address the question before us. In *Morrison Restaurants*, the employer sought a refund and abatement of FICA taxes assessed on unreported employee tips. 118 F.3d at 1528. The employer argued that the IRS does not have the authority under 26 U.S.C.

§ 3121(q) to assess its share of FICA taxes on unreported tips on an aggregate basis without first determining the underreporting by individual employees and crediting their wage history accounts. *Id.* at · 1529. This is precisely the position advocated by Fior D'Italia. The Eleventh Circuit rejected this argument, noting that § 3121(q)

> clearly states than an employer can be assessed for its share of FICA taxes on employee tips even if the employee fails to report all tips. *It also suggests that the employer can be assessed its share of FICA taxes even when the individual employee's share is not determined.*

*Id.* (emphasis added). The court concluded:

> [W]e are unconvinced that Congress's silence can be construed to mean that an employer cannot be assessed its share of FICA taxes based on employees' unreported tips in the aggregate without determining the underreporting by the individual employees and crediting the individual employees' wage history accounts.

*Id.* at 1529–30. The Eleventh Circuit deferred to the IRS's use of the aggregate method because its interpretation of the Code was reasonable. *Id.* at 1530.

The next year, in *Bubble Room II*, 159 F.3d at 554, the Federal Circuit similarly addressed whether the IRS has the authority to assess the employer's share of FICA taxes on unreported tips on an aggregate basis "without first determining the under-reporting by the individual employees and then crediting their Social Security wage earnings records." The court concluded that the statutes authorize the IRS to do so:

> I.R.C. § 3121(q) expressly contemplates that the employer may be liable for its share of FICA taxes even if the records supplied by the employee are missing, inaccurate, or incomplete. Although not conclusive, § 3121(q) would thus seem to imply that an indirect method may be

used to calculate the amount of employer FICA tax in the absence of any better evidence.

However, I.R.C. § 3121(q) does not fully address the question at issue here—whether the particular indirect formula used by the IRS to estimate the [employer's] FICA tax liability was illegal. I.R.C. § 6201 speaks to this question. Under I.R.C. § 6201, the IRS is "authorized and required to make the inquiries, determinations, and assessments" necessary for all taxes imposed by the Code, "which have not been duly paid ... in the manner provided by law." I.R.C. § 6201 implicitly authorizes the IRS to use an indirect formula in order to carry out the general power granted in I.R.C. § 6201. For example, the IRS would have to use an indirect formula to estimate the amount of FICA tax owed by an employer when there is no other way to "determine and assess" the wages deemed to have been paid by the employer.

*Id.* at 565. The Federal Circuit concluded that the statutes authorize the IRS to use the aggregate method without first determining the individual employees' tip income. *See id.* at 566–68.

Most recently, in *330 West Hubbard Restaurant,* 203 F.3d 990, 997, the Seventh Circuit addressed the issue and similarly concluded that the statutes authorize the IRS to assess the employer's share of FICA taxes based on the aggregate method without first determining the amount of under-reporting by individual employees. The Seventh Circuit was unequivocal:

> We conclude that [the employer] has failed to demonstrate that the IRS's aggregate method of collecting employer FICA taxes is an impermissible reading of the tax code. Accordingly, we uphold the IRS's interpretation of its authority to use the aggregate method of collecting FICA taxes.

*Id.* at 997.

Every circuit court that has addressed the aggregate assessment issue has come to the opposite conclusion from the majority. The majority's attempt to avoid the weight of circuit authority by suggesting that its position is somehow in line with that of *330 West Hubbard Restaurant* and *Morrison Restaurants* is transparently unsuccessful. *See* Maj. Op. at 850 n. 9 ("our holding is entirely consistent with those of the Seventh and Eleventh Circuits"). As noted above, both the Seventh and Eleventh Circuits held that the IRS has the authority to use the aggregate method with respect to unreported tip income without determining the under-reporting by individual employees and crediting their wage history accounts. *See 330 West Hubbard Restaurant,* 203 F.3d at 994, 997; *Morrison Restaurants,* 118 F.3d at 1529–30. Although the majority agrees that the IRS need not assess the employees in order to assess the employer, the majority concludes that the IRS may not rely on the aggregate method and must *audit* the employees. *See* Maj. Op. at 850 & n. 9. Requiring an audit is simply another way of saying that the IRS cannot estimate and that the only way the IRS can assess taxes on unreported or under-reported tips is to undertake an individual accounting of employees. This view can hardly be viewed as "entirely consistent" with that of the Seventh and Eleventh Circuits. The IRS's authority to use the aggregate method was at the heart of the cases in those circuits. The majority's recharacterization can only pretend consistency with these cases.

**B.  THE IRS'S INTERPRETATION IS REASONABLE.**

The Supreme Court has instructed that we must defer to an agency's interpretation of its statutes and that our review is restricted to determining whether that interpretation is reasonable. *See Chevron U.S.A. Inc. v. Natural Resources Def. Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is

based on a permissible construction of the statute."); *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 730, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985) ("The IRS's understanding of the terms of the Code is entitled to considerable deference."); *Bob Jones Univ. v. United States*, 461 U.S. 574, 596, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983) ("this Court has long recognized the primary authority of the IRS ... in construing the Internal Revenue Code"). We have likewise limited our review of IRS interpretations of the Code. *See Walthall v. United States*, 131 F.3d 1289, 1297 (9th Cir.1997) (concluding that where the IRS's interpretation is reasonable, "[w]e must ... show the IRS interpretation substantial deference"); *Durando v. United States*, 70 F.3d 548, 550 (9th Cir.1995) ("Courts give deference to IRS rulings and interpretations of the Code."); *Hawkins v. United States*, 30 F.3d 1077, 1082 (9th Cir.1994) (recognizing "the well-settled rule that an agency's interpretation of a statute is entitled to deference unless it contradicts the statute's plain meaning").

In reviewing the IRS's interpretation of the Code, we "need not find that the agency construction [is] the only one it permissibly could have adopted to uphold the construction, or even the reading that [we] would have reached if the question initially had arisen in a judicial proceeding." *Chevron*, 467 U.S. at 843 n. 11, 104 S.Ct. 2778; *accord Walthall*, 131 F.3d at 1297 (concluding that although "[t]he statute is not susceptible only to the [taxpayers'] interpretation ... the IRS's interpretation ... is reasonable" and "[w]e must therefore show the IRS interpretation substantial deference"). Moreover, we owe deference to the IRS's interpretation of the Code even absent a formal IRS rule. *See Alexander v. Glickman*, 139 F.3d 733, 736 (9th Cir.1998) ("We owe deference to the agency's interpretation of the statute even absent a formal agency rule interpreting the statute.").

The IRS's interpretation of the statutes at issue here-that is, its conclusion that the statutes permit it to use the aggregate method-is reasonable in light of the statutory language. Nothing in the statutes or regulations requires the IRS to determine the amount of unreported tips before assessing the employer's FICA tax liability, and nothing in the statutes or regulations prohibits the IRS from using the aggregate method. Rather, the IRS's use of the aggregate method is *entirely consistent* with the statutes and regulations and therefore is entitled to substantial deference. A brief review of the relevant Code sections reveals that the Code does not require or bar any method, but leaves selection of the method to the agency.

Section 3111 imposes a FICA tax on employers that is computed as a percentage of wages paid by the employer to its employees. 26 U.S.C. § 3111; 26 C.F.R. §§ 31.3111-1, 31.3111-4. "Wages" includes all tips received by employees except those that amount to less than $20 in any calendar month. 26 U.S.C. § 3121(a)(12)(B), (q); 26 C.F.R. § 31.3121(a)(12)-1. Section 3121(q) requires employers to pay the § 3111 taxes on the *total* amount of tips and other remuneration, up to the Social Security wage base. *See* 26 U.S.C. § 3121(a)(1). As the Federal Circuit recognized,

> [i]n the case of the *employee* FICA tax, the employer need only consider those tips that "are included in a written statement furnished by the employee to the employer pursuant to section 6053(a)." Unlike the employee FICA tax, however, *there is no parallel provision which limits the employer's FICA tax liability to tips that are included in the written statement furnished by the employee.*

*Bubble Room II*, 159 F.3d at 556 (quoting 26 U.S.C. § 3102(c)) (emphasis added).

Although the statutes do not directly address whether the IRS has the authority to make aggregate assessments with respect to unreported tips, *see* Maj. Op. at 849–50, they are certainly broad enough to permit the IRS to do so. In fact, it is precisely the statutes' silence that requires

*Chevron* deference. *See Chevron,* 467 U.S. at 843, 104 S.Ct. 2778. In particular, § 3121(q) provides that, even in cases where employees do not provide the employer with tip statements under 26 U.S.C. § 6053(a) or where the statements are inaccurate or incomplete, the IRS may issue a notice and demand for employer FICA taxes. *See* 26 U.S.C. § 3121(q). The statute does *not* suggest, let alone require, that the IRS must first audit the employees to determine the amount of unreported tips.

This statutory silence is buttressed by § 6201's express delegation authorizing the IRS to determine and assess the amount of FICA taxes imposed by § 3111. *See* 26 U.S.C. § 6201. Specifically, § 6201(a) permits the IRS to "make the inquiries, determinations, and assessments of all taxes ... imposed by this title." 26 U.S.C. § 6201(a). It is up to the IRS to choose the method, so long as reasonable, and it is reasonable for the IRS to conclude that the authority to determine and assess taxes includes the authority to use the aggregate method to assess the employer's taxes on unreported tips. Indeed, the IRS uses estimation methods in other contexts-specifically, to determine the amount of tips received by employees and assess a FICA tax against them under 26 U.S.C. § 446(b). Like § 6201(a), § 446(b) does not specifically authorize estimates, but § 446(b) has been interpreted to permit the IRS to use estimates to determine tax assessments. *See Bubble Room II,* 159 F.3d at 557–58. The majority posits that use of estimates with respect to employees is permissible but not so with employers. *See* Maj. Op. at 847–48. This dichotomy overlooks the fact that employers and employees have independent tax obligations with respect to tips. And, although employers arguably have a more difficult burden than employees in documenting the actual amount of tips, the implementation of estimates is a judgment best left to the IRS, not the court. The majority's approach tramples the deference owed to the IRS.

The IRS's interpretation of the statutes is also consistent with § 3111's imposition of a single tax on the employer based on the *aggregate* tips and other wages received by its employees. *See* 26 U.S.C. § 3111(a)-(b); *Bubble Room II,* 159 F.3d at 566 ("[T]he employer FICA tax imposed by I.R.C. § 3111 is expressed in terms of the employees' aggregate tip income."). Similarly, the limitations period for the assessment of employer FICA taxes is consistent with the conclusion that the IRS need *not* audit employees before assessing the employer; the limitations period does not begin to run until after notice and demand by the IRS under § 3121(q), *even if the limitations period for assessing employees has run.* *See* Rev. Rul. 95–7, 1995–4 I.R.B. 44 (Q & A 11). In other words, because the IRS can assess the employer even after it may no longer audit the employees, the statute implicitly authorizes the use of estimates. Although, as the majority points out, other interpretations of the statute are possible, *see* Maj. Op. at 849–50, to be reasonable, the IRS's interpretation need not rule out alternatives.

Congressional action in recent years suggests that Congress believes that the IRS has the authority to use the aggregate method as well. In 1998, Congress passed a law that prohibited the IRS from "threaten[ing] to audit [a] taxpayer in an attempt to coerce the taxpayer into entering a Tip Reporting Alternative Commitment [TRAC] Agreement." Internal Revenue Service Restructuring and Reform Act of 1998, Pub.L. No. 105–206, § 3414, 112 Stat. 685, 755 (July 22, 1998). Under the TRAC program, the employer agrees to educate its employees about tax reporting, establish procedures to ensure accurate tip reporting, and fulfill various federal tax requirements; in return, the IRS agrees to base the employer FICA tax liability solely on reported tips and any unreported tips discovered during an IRS audit of an employee. *See* H.R. Conf. Rep.

No. 105–599 at 274 (1998), U.S. Code & Cong. Admin. News at 297; S.Rep. No. 105–174 at 75 (1998); H.R.Rep. No. 105–364 (Pt. 1) at 73 (1997). The TRAC program is a special initiative that limits the employer's liability to actual rather than estimated tips. But, in making sure that TRAC is not used as a cudgel, *Congress acknowledged the IRS's power to make aggregate calculations* of employer tax obligations, before or without making determinations with respect to individual employees.

As the majority concedes, the IRS need not *assess* each employee before it can assess the employer. *See* Maj. Op. at 849. The majority stresses, rather, that the IRS need only *audit* each employee before assessing the employer. *See* Maj. Op. at 850 & n.9. But, as the majority recognizes, employer and employee tax obligations are *completely separate. See* Maj. Op. at 850. One has nothing to do with the other. Although the employer and employee may be bound together through an employment relationship, their tax obligations arise separately. *See Bubble Room II,* 159 F.3d at 565 ("We read §§ 3101 and 3111 as imposing a separate and distinct tax liability on employers.").[1] Where the wages fall within the wages band, the employer must pay taxes on them, regardless of whether the employees reported them. *See* 26 U.S.C. § 3121(q).

The employer's independent tax obligation resonates in the structure and text of the Code. The respective employer and employee tax obligations are set forth in different subchapters. The employer's obligation is set forth in § 3111; the employees' obligation is set forth in § 3101. As previously noted, the employer's duty to collect and remit the *employees'* share of FICA taxes applies only with respect to

*reported* tips-the employer's duty is not so limited. *See* 26 U.S.C. § 3102(c)(1), 3121(q). Finally, as discussed above, the limitations periods for the two tax obligations are different. *See* 26 U.S.C. § 3121(q).

The majority makes much of the IRS's lack of specific regulatory authority to use the aggregate method. But, as noted earlier, the IRS does not need to adopt a regulation in order to benefit from the deference owed to its interpretation of the Code. The majority also projects the image of a rogue IRS exercising its muscle to collect employer taxes on unreported tips, trampling on restaurants' rights and ignoring basic process. This characterization obscures the congressional dictate to tax all wages, specifically including unreported tips, and ignores the fact that the IRS's method is based on justifiable projections, not "thin air" estimates.

The majority also intimates that Congress tried to put the brakes on the IRS's effort to collect employer taxes on tips. An examination of recent legislation dispels this notion. Code § 45B generally allows an income tax credit to an employer for employer FICA taxes paid with respect to employee tips. *See* 26 U.S.C. § 45B. In 1996, Congress amended § 45B to clarify that the tax credit is available for employer FICA taxes paid on *all* tips, regardless of whether the employees reported the tips. *See* 26 U.S.C. § 45B(b)(1)(A), *as amended by* Small Business Job Protection Act of 1996, Pub.L. No. 104–188, § 1112(a), 110 Stat. 1755, 1759 (1996). The majority reads this amendment as "demonstrat[ing] the difficulty the executive and the legislative branches have had in reaching common ground on the problem of collecting taxes on employee tips." *See* Maj. Op. at 852. But, rather than a

---

1. Many of Fior D'Italia's arguments against use of the aggregate method focus on employees; for example, incentives with respect to employee tip-reporting and crediting of employee Social Security accounts. But the employer and employee tax obligations are separate and not completely parallel. Whether

employees report their tips and receive Social Security credit is not at issue here. If employees do not receive Social Security credit for all of their income, it is because they under-reported their income-not because of the aggregate method of assessing employer FICA taxes.

rebuke of "the IRS's recent efforts to enhance the collection of FICA taxes on cash tips," as the majority suggests, Maj. Op. at 852, the amendment merely confirms that the employer's tax obligation is completely separate from the employees' obligation. And the amendment does more-it confirms that the IRS may impose taxes on all tips and that the employer may benefit from a tax credit on those tips, whether reported or not.

## C. PRACTICALITY OF AGGREGATE METHOD.

The majority's policy arguments against the aggregate method are just that-the court making policy. Equally availing practical and policy considerations support the IRS's approach and weigh against the majority's position. For example, the majority's approach effectively prohibits the IRS from assessing the employer's share of FICA taxes with respect to unreported tips because the IRS cannot possibly audit all tipped employees to determine the degree of under-reporting. *See Bubble Room II,* 159 F.3d at 567 ("[A]s a practical matter, the IRS lacked the resources necessary to audit each of the [employer's] tipped employees to determine the unreported tip income of each tipped employee."). The majority's approach thereby invites employers and employees alike to evade their statutory tax obligations. *See id.* ("[R]equiring the IRS to make an assessment against each employee for employee FICA taxes on unreported tips before the IRS could make an assessment against the employer for employer FICA taxes on such tips might also provide an incentive to an employer to discourage accurate reporting or to ignore clearly inaccurate reporting by its employees."); *Morrison Restaurants,* 118 F.3d at 1530 ("[B]asing the employer's share of FICA taxes exclusively on employees' reported tips would provide incentive to the employer to discourage accurate reporting or ignore blatantly inaccurate reporting by the employees so that the employer could pay less FICA tax.").

The IRS's interpretation-the one to which we owe deference-requires only that employers comply with the law; it is neither unfair nor a punishment. *See Bubble Room II,* 159 F.3d at 566 ("[W]e reject the position that the *McQuatters* formula [i.e., the aggregate method] is punitive in nature and thus limited to situations where taxpayers fail to keep adequate records."). *Cf.* Maj. Op. at 848. Employers are required, by statute, to pay their share of FICA taxes on reported *and* unreported tips. Use of the aggregate method is not an effort to tell restaurants how to run their businesses. It is simply an alternate means of assessing the tax when individual employees' records are unavailable. Restaurants can continue to pool tips or not, to require certain reporting from their employees or not, and to create a specialized tip system or not. The choice lies with the restaurant, not the IRS. The consequence is that the tax is still owed and the IRS will impose a reasonable method to assess it. Because the IRS's conclusion that it can assess the employer's share of FICA taxes with respect to unreported tips based on the aggregate method is reasonable, we should defer to that interpretation, particularly here, in light of the need for uniformity in administering the national tax system and the views of our sister circuits.

## D. USE OF THE AGGREGATE METHOD DOES NOT PRECLUDE A CHALLENGE AS TO ACCURACY AND AMOUNT.

The majority confuses the IRS's authority to use the aggregate method with the accuracy of that method. *See* Maj. Op. at 846–47, 848–49. "[W]hether there are flaws in the indirect formula used to estimate the FICA tax is a separate matter from whether the IRS has the authority to assess an employer-only FICA tax based on an aggregate estimate of unreported tip income." *Bubble Room II,* 159 F.3d at 568.

Adoption of the aggregate method does not preclude an employer from challenging

the amount of the assessment by showing, for example, that some of the tips were received by employees who fell outside the wages band. *See 330 West Hubbard Restaurant,* 203 F.3d at 996 ("[The employer's] argument [regarding the wages band] is misplaced because it fails to distinguish between the IRS's authority to collect taxes and the correctness of the IRS's calculation of the amount of those taxes."); *Bubble Room II,* 159 F.3d at 567 (concluding that failure to take the wages band into account does not "make the assessment unlawful" but, rather, "merely suggests that the amount of FICA tax assessed against [the employer] may have been incorrect by some margin and that it may be entitled to a refund of some portion of the FICA tax assessed against it"). Here, however, the issue of accuracy is not before us, because Fior D'Italia did not challenge the accuracy of the calculation-it challenged only the IRS's authority to assess taxes under the aggregate method.

The IRS is not just plucking a number out of the air and shifting the burden to the taxpayer as the majority would have us believe. Use of the aggregate method does not shift the normal burdens in some topsy-turvy manner. Instead, the aggregate method is predicated on a reasonable estimate and that may be challenged by the taxpayer. There is nothing new or unusual in this scheme of tax assessment.

\*        \*        \*        \*        \*        \*

Our review of the IRS's interpretation of the Code is limited. Because the IRS's conclusion that it has the authority to use the aggregate method is reasonable, we must defer to it, as have three circuits before us. This approach preserves the right to challenge the accuracy of the assessment resulting from the aggregate method. Therefore, I respectfully dissent.